UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re:

Gregory J. Lundberg and Constance L. Lundberg,   Case No. 19-10014
                                                 Chapter 12 Case
                                                 Hon. Carl L. Bucki, USBJ

                                Debtors

# SECOND AMENDED CHAPTER 12 PLAN

The Debtors herein, Gregory J. Lundberg and Constance L. Lundberg (the "Debtors"), voluntarily commenced this case under chapter 12 of title 11 of the Unites States Bankruptcy Code (the "Code"), and by and through their counsel, Hodgson Russ, LLP, submits the following Amended Plan pursuant to chapter 12 of the Code (the "Amended Plan" or the "Plan"):

## I. PAYMENTS TO THE TRUSTEE AND BEYOND

1. The Debtors shall submit portions of their future income to the control and supervision of the Trustee, Morris L. Horwitz (the "Trustee"), as it is necessary for the execution of this Plan. The Debtors shall pay the Trustee the amount of approximately $2,852.63 monthly for sixty (60) months, comprised of a fixed monthly payment of principal and interest in the amount of $1,377.43, plus escrowed real estate taxes and insurance, for a total approximate amount of $2,460 per month (subject to escrow and insurance adjustments) plus Trustee's commissions and fees, commencing on the first (1st) day of the third (3rd) month following the date of the Confirmation of this Plan, and continue to make such payments on the first (1st) of every month for sixty (60) consecutive payments as is more fully discussed below.

2. Additionally, the Debtors will make five (5) annual payments of $21,019.68 to the Trustee for immediate payment to the holder of an additional secured claim, defined below, held by the United States of America, acting through the USDA Farm Service Agency ("FSA"), with payments commencing on the first (1st) day of the twelfth (12th) month following confirmation of this Plan.

3. The total amount of the Plan payments made to the Trustee is approximately $276,256.20 (subject to escrow and insurance adjustments), inclusive of the Trustee's fees and expenses and professional fees to be paid to Debtors' counsel, as more fully discussed below.

4. Thereafter, the Debtors will make direct payments in an approximate amount of $2,460.00 monthly, comprised of a fixed monthly payment of principal and interest in the amount of $1,377.43, plus escrowed real estate taxes and insurance, for a total approximate amount of $2,460 per month (subject to escrow and insurance adjustments) for an additional three hundred (300) months, commencing on the first (1st) day of the expiration of the five (5) year payment plan to the Trustee. The entirety of these payments will be paid directly to the Debtors' largest secured creditor and holder of the mortgage on their principal residence, presently notice of Appearance Creditor SN Servicing Corporation as servicer for U.S. Bank National Trust, as Trustee of the Igloo Series IV Trust ("SN"). At maturity, the Debtors will make a one-time balloon payment of $30,994.38, representing advances made by SN for purposes of maintaining the Debtor's principal residence's taxes and insurance during the pending bankruptcy proceeding.

5. The Debtors will also make seven (7) annual payments in the amount of $19,968.70 for a total of $139,780.90 to FSA.

## II. CHAPTER 12 TRUSTEE FEES

6. On or about January 7, 2019, Morris L. Horwitz, Esq. (the "Trustee") was appointed as Trustee by the United States Trustee and the Trustee shall be paid in full pursuant to 11 U.S.C. § 1226(b)(2).

### III. SIGNIFICANT EVENTS

7. The Debtors filed their voluntary petition for relief under chapter 12 of the Code on January 4, 2019 (the "Petition Date").

    A.    <u>First Motion to Extend Time</u>

(i) Pursuant to Bankruptcy Code § 1221, the Debtors must file a Plan of Reorganization not later than 90 days after the order for relief; however, "the court may extend such period if the need for an extension is attributable to circumstances for which the debtor should not justly be held accountable." 11 U.S.C. § 1221 *emphasis added*.

(ii) On or about June 13, 2019, the Debtors filed a Motion for Extension of Time to File a Plan of Reorganization until September 4, 2019 (the "First Motion to Extend") [Docket No. 14].

(iii) On or about July 15, 2019, a hearing was held on the First Motion to Extend and an Order was entered granting the First Motion to Extend on July 16, 2019.

    B.    <u>Motion to Dismiss</u>

(i) On or about February 6, 2020, the Trustee filed a Motion to Dismiss Debtors' Chapter 12 Case (the "Motion to Dismiss") [Docket No. 22].

(ii) Said Motion to Dismiss alleged Debtors failed to file any Plan; failed to obtain any further extension of time to file a Plan; failed to file monthly operating reports as required by 11 U.S.C. § 704(a)(8); and failed otherwise to prosecute its case.

(iii) Said Motion to Dismiss has been adjourned five (5) times by the Trustee, during which time the Debtors have diligently worked to file the present Plan. The Motion to Dismiss was ultimately withdrawn by the Trustee.

C. <u>Motion to Assume Lease or Executory Contract</u>

(i) On or about April 2, 2020, the Debtors filed a Motion to Assume Lease or Executory Contract (the "Sale Motion") [Docket No. 35].

(ii) Said Sale Motion sought entry of an order: (I) authorizing assumption of an agreement for the sale of approximately 70 acres of a part of real property, as depicted on the schematic annexed to the Sale Motion as Exhibit A located in the town of East Otto, Cattaraugus County, New York, known as VL – (0) Safford Road on Tax Map No. 36.002-1-5.1, together with all improvements thereupon, including all privileges, rights, easements, and appurtenances thereto (the "Real Property"), free and clear of liens, claims, encumbrances, and interests, with Aaron A. Hertzler and Katieann B. Hertzler, or theirs assignee (collectively "Purchasers"), pursuant to the terms set forth in the Purchase and Sale Contract for Real Property (the "Agreement"), dated February 22, 2020, annexed to the Sale Motion as Exhibit B; (II) authorizing the sale of such Real Property pursuant to the terms set forth in the Agreement to Purchasers; (III) establishing Bid and Sale Procedures for the sale of such Real Property (the "Bid and Sale Procedures") annexed to the Sale Motion as Exhibit C; (IV) scheduling a hearing on the approval of the sale of such Real Property; (V) approving the form and manner of notice of the sale of such Real Property; and (VI) granting other appropriate related relief, pursuant to §§ 363, 365, and 1206 of the United States Bankruptcy Code and Bankruptcy Rules 6004 and 6006.

(iii) SN filed opposition to the Sale Motion on April 16, 2020 [Docket No. 49].

(iv) That part of the Sale Motion establishing Bid and Sale Procedures and scheduling a hearing on approval of the Sale Motion, was approved on April 17, 2020 [Docket No. 50].

(v) On or about June 25, 2020, the Sale Motion was approved in its entirety.

    D.    <u>Motion for Relief From Stay</u>

(i) On or about April 8, 2020, SN filed a Motion for Relief From Stay (the "Motion for Relief From Stay") [Docket No. 41].

(ii) Said Motion for Relief From Stay sought entry of an order, pursuant to §§ 362(d)(1) and (d)(2) of the United States Bankruptcy Code, vacating the automatic stay to permit SN, its successors and/or assigns, to enforce its mortgage on the Debtors' premises located at 8000 Safford Road, East Otto, New York 14729; granting SN reasonable attorney fees and costs; and such other and further relief as was just and proper.

(iii) Said Motion for Relief From Stay has been adjourned by SN and/or this Court seven (7) times and is currently returnable simultaneous with the hearing on the Debtors' Second Amended Chapter 12 Plan.

    E.    <u>Second Motion to Extend Time</u>

(i) As the Court is aware, on or about June 13, 2019, the Debtors filed their First Motion to Extend, which extended the time for the Debtors to file their Plan until September 4, 2019 [Docket No. 14].

(ii) On or about July 15, 2019, a hearing was held on the First Motion to Extend and an Order was entered granting the First Motion to Extend on July 16, 2019.

(iii) As is detailed in the Debtors' Second Motion to Extend Time (*see* Docket No. 80) (the "Second Motion to Extend Time"), the Debtors were unable to file a Plan within the time prescribed and extended by this Court. As such, the Debtors contemporaneously filed their Second Motion to Extend Time.

F. <u>Motion to Determine Secured Status Within Chapter 12 Plan</u>

(i) On February 10, 2021, the Debtors filed their Motion to Determine Secured Status Within Chapter 12 Plan (the "Pond Motion"). *See* Docket No. 120.

(ii) As is detailed in the Pond Motion, the Debtors sought to, *inter alia*, determine the status of the claim of HSBC Mortgage Corporation, an entity which has not otherwise made a formal appearance in the Debtors' Chapter 12 case, but who holds a secured interest in certain of the Debtors' real property located at 8000 Safford Road, East Otto, New York 14729 in the County of Cattaraugus (the "Residence");

(iii) The Court heard oral argument on the Pond Motion and, on March 5, 2021, entered its Order granting the Debtors' Pond Motion subject to the terms set forth therein, thereby voiding, pursuant to 11 U.S.C. § 506(d) the subordinate mortgage of HSBC Mortgage Corporation as recorded in the Office of the Cattaraugus County Clerk under Instrument Number 42216-007 on October 21, 2005.

(iv) Accordingly, no further treatment of the foregoing is necessary with respect to the Debtors' Chapter 12 Plan.

IV. **<u>SECURED CLAIMS</u>**

8. Each holder of a secured claim shall retain the lien securing such claim to the extent of the allowed amount of such claim, until the claim is paid in full, unless stated otherwise

below. Allowed Secured Claims are claims secured by property of the Debtors' bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under Bankruptcy Code section 506. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim, unless otherwise stated below.

A. Long Term Notes

(i) Proof of Claim No. 1 – Held by SN, as transferee to the Secured Claim previously held by Nationstar Mortgage LLC d/b/a Mr. Cooper, assignee of HSBC Bank USA, N.A ("Nationstar"). As alleged in Proof of Claim No. 1 ("POC 1"), the Debtors are indebted to SN pursuant to a Note dated October 20, 2005 in the original principal sum of $359,650.00 and secured by a Mortgage dated October 20, 2005 whereby the Debtors granted HSBC Bank USA a mortgage lien in the principal amount of $359,650.00 upon certain property commonly known as 8000 Stafford Road, East Otto, New York, Cattaraugus County (*i.e.*, the Residence) which was subsequently modified and amended as of March 5, 2013, to reflect a new principal indebtedness of $388,916.79 owing to HSBC Bank USA and, for a third time, subsequently modified and amended as of September 20, 2017, to reflect a new principal indebtedness of $455,274.97 owing to Nationstar. As of the Petition Date, SN, as transferee to Nationstar's previously held POC 1, alleges that the Debtors are in arrears in an amount equal to $486,742.40, an amount which has been reduced as a result of the Sale Motion, to $472,240.28.

(ii) Proof of Claim No. 9 – Held by FSA. As alleged in Proof of Claim No. 9 ("POC 9"), the Debtors are indebted to FSA in the amount of $206,330.49 as of the Petition Date, based on a filed proof of claim, fully secured by a first lien blanket security interest in the Debtors' farm machinery and equipment, livestock, crops, inventory and accounts.

7
Case 1-19-10014-CLB, Doc 137, Filed 05/20/21, Entered 05/20/21 09:32:36, Description: Main Document, Page 7 of 18

## V. UNSECURED CLAIMS

      A.      Priority Unsecured Debts

      (i)      Amended Proof of Claim No. 5 – Internal Revenue Service. As alleged in Amended Proof of Claim No. 5 ("POC 5"), the claim held by the Internal Revenue Service ("IRS") alleges tax entitled to priority pursuant to 11 U.S.C. § 507(a)(8) in the amount of $0; said claim is allowed by the Debtors in the amount of $0 for the purposes of solicitation and acceptance of the Plan.

      B.      General Unsecured Debts

      (i)      As alleged in Schedules E/F, the Debtors have four (4) general unsecured creditors with outstanding liabilities in an amount equal to $59,707.47.

      C.      Treatment of Unsecured Claims

      (i)      Pursuant to § 1225(a)(4) of the Bankruptcy Code, to confirm the Plan, the Court must find that all creditors will receive at least as much under the Plan as such claim holders would receive in a chapter 7 liquidation. General unsecured creditors would not receive a distribution under a chapter 7 liquidation in the present circumstances and, accordingly, will receive no payment in this Plan. The Debtors presently have no net equity and are unable to devote any additional income to general unsecured creditors, while maintaining the foregoing repayment obligations due and owing to the Trustee, Debtors' counsel, SN, and FSA.

## VI. THE DEBTOR DESIGNATES THE FOLLOWING CLASSES OF CLAIMS:

**Class I:**     **Long-Term Notes Secured by the Debtors' Assets**

A. The (POC 1) claim of SN, in the now-reduced amount of $472,240.28, as fully secured by a first priority mortgage. $280,000 of SN's POC 1 claim will remain secured. At maturity, the Debtors will make a one-time balloon payment of $30,994.38, representing advances made by SN for purposes of maintaining the Debtor's principal residence's taxes and insurance during the pending bankruptcy proceeding.

B. The fully secured (POC 9) claim of FSA, in the amount of $206,330.49, subject to a duly filed UCC Financing Statement (dated November 19, 2013, Filing No.: 201311196215088), memorializing a security interest in certain of Debtors' property as described in the UCC Financial Statement referenced herein.

**Class II:**     **Administrative Priority Claims**

A. The Debtors shall make payment with respect to the Trustee's fees and expenses and counsel fees to be paid to Hodgson Russ LLP, as are both entitled to priority as an expense of administration pursuant to 11 U.S.C. § 503(b).

B. The Trustee's fees and expenses shall be calculated to be $129.47 on each approximate $2,460 payment set forth herein, $1,050.98 on each $19,968.70 payment set forth herein, and $13.16 on each $250 payment set forth herein during the five (5) year term of the Debtors' Chapter 12 Plan.

C. Counsel and administrative fees to be paid to Hodgson Russ, LLP and the Debtors' accountants (Norwalk, Garrison & Associates, LLC) pending further Order of this Court are in an amount of $15,000 due and owing to counsel and accounts and shall be paid out

on a monthly basis over the same five (5) term to the Trustee to be ultimately turned over to Debtors' counsel and held in escrow in an amount equal to $250 per month starting on the third (3rd) month following confirmation of this Plan. Norwalk, Garrison & Associates, LLC shall be paid in full first.

**Class III:** **Priority Unsecured Claims**

A. The (POC 5) claim of the IRS, in the now-reduced amount of $0.00.

**Class IV:** **General Unsecured Claims**

A. All duly filed General Unsecured Claims in an approximate amount of $59,707.47 will receive no distribution.

## VII. TREATMENT OF CLAIMS

Claims shall be paid and treated as follows:

| Class I | Long-Term Notes Secured by the Debtors' Assets | A. The (POC 1) Class I(A) claim of SN shall be deemed an allowed secured claim in the amount of $280,000 (the appraised value of the Debtors' primary residence and surrounding property annexed to this Plan as **Exhibit A** as previously reduced by the acreage sold as a result of the Sale Motion discussed herein), shall be paid as set forth hereinafter.<br><br>The Debtors shall repay the reduced principal sum of $280,000 and interest at 4.25% over a 30 year term for a fixed monthly payment of $1,377.43, plus escrowed real estate taxes and insurance for a total approximate amount of $2,460 (subject to adjustments for escrow and insurance), with payments commencing on the first (1st) day of the third (3rd) month following entry of an order approving the Plan. At maturity, | Approximately $2,460/month comprised of a fixed monthly payment of principal and interest of $1,377.43, plus escrowed real estate taxes and insurance for a total approximate amount of $2,460 per month (subject to escrow and insurance adjustment) + Trustee's commission ($129.47) = **approximately $2,589.47/month for sixty (60) months** |
|---|---|---|---|

the Debtors will make a one-time balloon payment of $30,994.38, representing advances made by SN for purposes of maintaining the Debtor's principal residence's taxes and insurance during the pending bankruptcy proceeding.

Absent a default, the obligations to SN will mature pursuant to the foregoing terms. The entire outstanding principal balance, as reduced pursuant to this Plan, together with all accrued interest from hereon, shall be due and payable in thirty (30) years from the first payment date in addition to the maturity balloon payment discussed above. Upon entry of an order authorizing the Debtors' discharge under this Chapter 12 Plan, the automatic stay imposed under the Bankruptcy Code shall be lifted with respect to SN.

Upon default of the foregoing terms and those included throughout this Chapter 12 Plan, upon a default by the Debtors prior to their discharge, SN is entitled to notice all parties and receive relief from the automatic stay if the default is not cured within the cure period (15 days).

Notwithstanding anything contained herein to the contrary, the payment terms described within this paragraph are representative of the payment terms that are accommodating to the Debtors and within their affordability, given their organic crop farm operation.

B. The (POC 9) Class I(B) claim of FSA shall be deemed an allowed secured claim in the amount of $206,330.49. The Debtors shall repay the principal sum of $206,330.49 and interest, in an annual payment for

| | | | |
|---|---|---|---|
| | | twelve (12) years with payments commencing on the first (1st) day of the twelfth (12th) month following entry of an order approving the Plan. Absent a default, the obligations to FSA will mature pursuant to the foregoing terms. The entire outstanding principal balance, together with all accrued interest from hereon, shall be due and payable in twelve (12) years from the first payment date. Notwithstanding anything contained herein to the contrary, the payment terms described within this paragraph are representative of the payment terms that are accommodating to the Debtors and within their affordability, given their organic crop farm operation.<br><br>FSA will be granted a continuing, post-petition rollover lien pursuant to 11 U.S.C. §1205 (b)(2) with respect to all after-acquired personal property collateral, including any products and proceeds thereof, which lien shall be of the same nature, extent and priority as said creditor's pre-petition liens. FSA is hereby granted a continuing, post-petition rollover lien/replacement lien pursuant to 11 U.S.C. §1205(b)(2) with respect to all after-acquired chattel.<br><br>Debtors shall maintain property insurance on the real property and will make timely payments of post-petition real property taxes. FSA shall be listed as a loss payee on real estate and personal property insurance. | $19,968.70/year + Trustee's commission ($1,050.98) = **$21,019.68/year for five (5) years** |
| Class II | Administrative Priority Claims | Counsel and administrative fees to be paid to Hodgson Russ, LLP and the Debtors' accountants (Norwalk, Garrison & Associates, LLC) pending further Order of this Court are in an amount of $15,000 due and owing to counsel and accounts and shall be paid out on a monthly basis over the same | $250 per month for sixty (60) months + Trustee's commission ($13.16) = **$263.16/month for sixty (60) months** |

|  |  | five (5) term to the Trustee to be ultimately turned over to Debtors' counsel and held in escrow in an amount equal to $250 per month starting on the third (3rd) month following confirmation of this Plan. Norwalk, Garrison & Associates, LLC shall be paid in full first. |  |
|---|---|---|---|
| Class III | Priority Unsecured Claims | The (POC 5) Class III(A) claim of the IRS has been amended and reduced to $0.00 as of July 2020 and will thus not be accounted for by way of this Plan. | $0 |
| Class IV | General Unsecured Claims | The Class IV(A) General Unsecured Claims, as filed and disallowed by the Debtors, shall receive a dividend payment of $0.00, without any interest. | $0 |

## VIII. DISTRIBUTION OF PLAN PAYMENTS

9. The Trustee shall make distributions from payments made by the Debtors to the Trustee under the Plan as follows:

(i) In payment of the Trustee's fees and expenses, as the Trustee is entitled to priority as an expense of administration pursuant to 11 U.S.C. § 503(b). The Trustee's fees and expenses shall be calculated to be in accordance with the chart set forth above.

(ii) Administrative Priority Claims: Counsel and administrative fees to be paid to Hodgson Russ, LLP and the Debtors' accountants (Norwalk, Garrison & Associates, LLC) are in an amount of $15,000 due and owing to counsel and accounts and shall be paid out on a monthly basis over the five (5) year plan to the Trustee in an amount equal to $250 per month starting on the third (3rd) month following confirmation of this Plan, with Norwalk, Garrison & Associates, LLC being paid in full first.

(iii) In payment of Class I expenses as set forth within the terms of this Plan.

## IX. MEANS OF EXECUTION OF THE PLAN

10. The Debtors shall be allowed to suspend Plan payments, if any, to the Trustee for a maximum period of three (3) months during the principal term of the Plan, only with the Trustee's consent. The accumulated arrearages, if any, due to suspension of Plan payments, may be cured by the Debtors at any time on or before the date that the final payment to the Trustee is due under the Plan. During the course of this Plan, the Debtors shall only be able to utilize the default provisions set forth in this Section IX five (5) times (representing once per calendar year).

## X. PROVISION FOR ASSUMPTION/REJECTION OF EXECUTORY CONTRACTS

11. Effective on and as of the Effective Date of the Plan, any and all executory contracts and unexpired leases that exist with the Debtors and any person which (i) have not expired or terminated pursuant to their own terms, or (ii) have not previously been assumed, or assumed and assigned or rejected pursuant to an order of the Bankruptcy Court on or prior to the date of the Order confirming the Plan, or (iii) are not the subject of pending motions to reject as of the date of the Order confirming the Plan, or (iv) are not specified in a list of executory contracts and unexpired leases to be rejected pursuant to the Plan are hereby specifically assumed.

12. At their sole option or in accordance with the terms of a Bankruptcy Court Order, the Debtors shall satisfy all undisputed cure and any other monetary default payments required by Bankruptcy Code Section 365(b)(1) under any executory contract and unexpired lease assumed pursuant to the Plan, but only to the extent any such executory contract or unexpired lease is actually in default (and to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law): (a) by payment of such undisputed cure

amount, without interest, in cash within sixty (60) days following the Effective Date; (b) by payment of such other amount as ordered by the Bankruptcy Court; or (c) on such other payment terms as agreed to by the parties to such assumed executory contract or unexpired lease.  In the event of a dispute, payment of the amount otherwise payable hereunder shall be made without interest, in cash (a) thirty (30) days following entry of a final order liquidating and allowing any disputed amount or as soon as practical thereafter, or (b) on such other terms as agreed to by the Debtors and the party to such executory contract or unexpired lease.

## XI.  **DISCHARGE**

13. The Debtors shall receive a discharge in accordance with Section 1228 of the Bankruptcy Code after completion of all payments under the Plan.  If the Debtors fail to receive a discharge under 11 U.S.C. §1228 of the Bankruptcy Code, then any compromise arrangements made by secured creditors may be avoided and the original obligations between the parties reinstated, except to the extent that this Court specifically orders otherwise.  In the event any secured claims are being paid pursuant to their original contract or pursuant to new agreements reached between the parties, including any new liens required to be filed, to the extent that any such new agreements exist, the parties are hereby ordered to execute any and all documents necessary to reflect the new notes and obligations which exist between the parties. In the event of a default under the Plan, the secured creditors may reinstate the terms of the original obligations. To the extent that the new arrangement reflects an extension of the obligations secured by valid liens filed prior to the filing of the petition, said liens will continue in existence as of the date of the filing of the lien, and not as of the date of the new arrangement between the parties.

## XII. MODIFICATION

16. Pursuant to Section 1229 of the Bankruptcy Code, as amended, the Debtors shall have the right to modify this Plan after confirmation.

## XIII. LIEN RETENTION

15. Pursuant to Section 1225(a)(5) of the Bankruptcy Code, as amended, secured creditors shall retain their liens.

## XIV. PROPERTY OF THE ESTATE

16. Title to the property of the estate, subject to valid and existing liens, shall vest in the Debtors upon confirmation of the Plan.

17. The Debtors shall continue in control of their business and shall have all rights to operate in the ordinary course of business. During the term of the Plan, the Debtors may obtain credit secured by a lien against property of the estate with Court approval, subject to the rights of existing secured creditors under State Law.

Dated: May 19, 2021		*/s/ Gregory Jay Lundberg*
		Gregory Jay Lundberg


Dated: May 19, 2021		*/s/ Constance Louise Lundberg*
		Constance Louise Lundberg


Dated: May 19, 2021		*/s/ James J. Zawodzinski, Jr.*
		Garry M. Graber, Esq.
		James J. Zawodzinski, Jr., Esq.
		Hodgson Russ LLP
		*Attorneys for the Debtors*
		The Guaranty Building
		140 Pearl Street, Suite 100
		Buffalo, NY 14202
		Telephone No.: (716) 856-4000
		ggraber@hodgsonruss.com
		jzawodzi@hodgsonruss.com

James

These are the signatures to approve the Chapter 12 Plan

May 19, 2021    *Gregory J Lundberg*

May 19, 2021    *Constance Lundberg*